UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| INDUSTRIAL MARITIME CARRIERS, LLC, | § § § | |
| *Plaintiff* | § § | CIVIL ACTION NO. _____ |
| V. | § § | |
| DANTZLER, INC. *Defendant* | § § § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGEMENT AND DAMAGES**

The plaintiff, Industrial Maritime Carriers, LLC ("IMC"), files this Original Complaint for Declaratory Judgment and Damages, and respectfully represents:

**THE PARTIES**

1. At all material times, the plaintiff, IMC, was a foreign corporation organized and existing under the laws of a state other than the State of Florida, with its principal offices in Houston, Texas, and who was and is engaged in the business of operating vessels for the carriage of goods by sea. Specific to this action, IMC is the time charterer of the M/V INDUSTRIAL FIGHTER.

2. At material times, the defendant, Dantzler, Inc. (hereinafter referred to as "Dantzler"), was, on information and belief, a corporation organized under the laws of the State of Florida, with its principal place of business in Miami Lakes, Florida, and is therefore subject to personal jurisdiction in this Court. As is relevant here, on information and belief Dantzler is the successor entity of Dantzler Lumber & Export Company ("DLEC").

1

## JURISDICTION AND VENUE

3. This Court may properly exercise subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(1) because Dantzler resides in the Southern District of Florida as "residence" is defined with respect to a corporate entity by 28 U.S.C. 1391(c).

## FACTUAL BACKGROUND

5. On information and belief, DLEC brought suit against another now defunct entity, Monsted Chartering K/S ("Monsted"), in 2001 in Brazil arising out of a dispute related to the form of a bill of lading to be issued by Monsted for the ocean carriage of cargo. After protracted litigation, the Brazilian courts entered judgment in DLEC's favor against Monsted in the approximate amount of $2,600,000.00 in 2008. At some point thereafter, Dantzler and/or DLEC sought to recover the alleged debts of Monsted against Scan-Trans Chartering K/S ("Scan-Trans").

6. On information and belief, Dantzler instructed its attorneys in Brazil to seek to enforce the judgment in favor of its predecessor DLEC against Monsted. On or about June 7, 2013, Dantzler sought and obtained an order in Brazil directing the execution of the judgment against Scan-Trans through the seizure of the INDUSTRIAL FIGHTER. On June 18, 2013, the INDUSTRIAL FIGHTER was seized in Port Santos, Brazil.

7. IMC, as the time-charterer of the INDUSTRIAL FIGHTER, does not have an ownership interest in the vessel but has instead contracted for its use in conjunction with

operating its business as an ocean carrier. Similarly, Scan-Trans and Monsted have no ownership interest in the INDUSTRIAL FIGHTER.

8. In fact, the registered owner of the INDUSTRIAL FIGHTER is MS "ERIS J" Schiffahrtsgessellschaft mbH & Co. KG, and the beneficial owner and manager of the vessel is Jungerhans Maritime Services GmbH & Co. KG (collectively "Owners"). Owners do not have any corporate relationship to Scan-Trans or Monsted, and the INDUSTRIAL FIGHTER is not an asset of any of those companies.

9. Because the INDUSTRIAL FIGHTER is not an asset of Monsted or any of its successor or related companies, Dantzler's seizure of the INDUSTRIAL FIGHTER in Port Santos, Brazil, is illegal and wrongful.

10. Immediately following the seizure of the INDUSTRIAL FIGHTER, on June 19, 2013, counsel for IMC directed correspondence to Dantzler's registered agent for service of process advising Dantzler that the INDUSTRIAL FIGHTER was neither owned nor an asset of Monsted or Scan Trans. *See* June 19, 2013, Correspondence attached hereto as "Exhibit 1." As further set forth in Exhibit 1, IMC specifically notified Dantzler that its seizure of the INDUSTRIAL FIGHTER was causing IMC to incur damages including but not limited to loss of use, loss of charter hire, bunker consumption, and other costs and expenses. Dantzler was further notified that should it continue to wrongfully detain the INDUSTRIAL FIGHTER that IMC would likely be held liable by Owners in an amount in excess of $15,000,000.00 for failure to timely re-deliver the vessel and the consequential losses directly and proximately caused as a result.

11. On June 20, 2013, after having not received a reply from Dantzler, additional correspondence was sent to Dantzler's registered agent for service of process. *See* June 20,

2013, Correspondence attached hereto as "Exhibit 2." This correspondence placed Dantzler on specific notice that its continued wrongful detention of the INDUSTRIAL FIGHTER was interfering with IMC's contractual and business relationships with third parties, as well as continuing to cause other damages to IMC.

12. After having been advised that Dantzler had retained counsel, further correspondence was sent to Dantzler's attorney on June 21, 2013, providing additional documentation regarding the identity of the INDUSTRIAL FIGHTER's owners. *See* June 21, 2013, Correspondence, attached hereto as "Exhibit 3." In addition to reiterating the fact that IMC was sustaining damages as a result of Dantzler's wrongful arrest of the INDUSTRIAL FIGHTER, and the fact that the wrongful arrest was interfering with IMC's contractual and business relationships with third parties, the correspondence also included a copy of the INDUSTRIAL FIGHTER's certificate of registry identifying her owners.

13. Despite providing evidence to Dantzler conclusively establishing the identity of Owners, Dantzler, in bad faith and with a reckless disregard for IMC's rights, failed to take prompt action (or any action) to secure the release of the INDUSTRIAL FIGHTER from seizure in Brazil.

14. Following Dantzler's bad faith refusal to seek to lift the seizure, Brazilian counsel for Owners filed a motion seeking the release of the vessel in the 2nd Civil Court Division, Judicial District of Itajaí, State of Santa Catarina. In support the motion, counsel for Owners attached the exact same documentation previously provided to Dantzler the week before.

15. On June 24, 2013, the Brazilian court, granted Owner's motion and ordered the release of the M/V INDUSTRIAL FIGHTER on the grounds that she was wrongfully seized, and was not an asset of Scan-Trans (or Monsted) subject to seizure. In support of its finding, the

Brazilian court relied on the exact same documentation previously provided to Dantzler by IMC to establish the identity of Owners.

## COUNT 1 – WRONGFUL ARREST

16. IMC incorporates and reasserts the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

17. Dantzler knew, or in the exercise of reasonable diligence should have known, that the INDUSTRIAL FIGHTER was not an asset of its judgment debtor prior to the seizure of the vessel and that therefore Dantzler had no legal right, privilege or lien on the vessel that would justify its seizure. Dantzler's failure to reasonably investigate the validity of its claim against the INDUSTRIAL FIGHTER as an asset of Scan-Trans or Monsted prior to orchestrating the seizure and detention of the vessel exhibits a reckless disregard for the property and contractual rights of third-parties, including IMC.

18. Despite having been specifically informed by IMC that it had no legal basis to seize the vessel and that Dantzler's wrongful arrest of INDUSTRIAL FIGHTER was causing IMC to sustain significant consequential damages, Dantzler unreasonably refused to take any action to secure the prompt release of the INDUSTRIAL FIGHTER from seizure. Dantzler's seizure and continued detention of the INDUSTRIAL FIGHTER in the face of incontrovertible evidence that the vessel is not an asset of Scan-Trans or Monsted was therefore malicious, exhibited a reckless disregard for the property and contractual rights of IMC and/or constitutes bad faith.

19. Dantzler's wrongful arrest of the INDUSTRIAL FIGHTER deprived IMC of the use of the vessel, and delayed the vessel's sailing. This has caused and continues to cause IMC to sustain damages, including but not limited to the following:

   (a) Lost charter hire;

   (b) The additional costs of fuel and consumption of bunkers while the vessel is detained in Port Santos, Brazil;

   (c) Loss of earnings and other liabilities;

   (d) Other damages to be proven at trial in this matter.

 20. The damages sustained by IMC, which are in excess of $180,000.00, were directly and proximately caused by Dantzler's wrongful arrest of the INDUSTRIAL FIGHTER, and therefore Dantzler is liable to IMC for all losses sustained.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTACT AND/OR BUSINESS RELATIONSHIPS

 21. IMC incorporates and reasserts the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

 22. IMC has a business relationship with Owners, including the time charter agreement for the use of the INDUSTRIAL FIGHTER. IMC has a further business relationship with those interests who have cargo onboard the INDUSTRIAL FIGHTER insofar as IMC is an ocean carrier in relation to that cargo and has issued bills of lading covering its ocean carriage.

 23. Immediately following the wrongful arrest and/or seizure of the INDUSTRIAL FIGHTER, IMC specifically informed Dantzler of the existence of the above business relationships. *See* Exhibits 2-4. Dantzler therefore had actual or constructive knowledge of IMC's of the above business relationships no later than June 19, 2013.

 24. Notwithstanding such knowledge, and notwithstanding the fact that IMC specifically informed Dantzler that its continued detention of the INDUSTRIAL FIGHTER in Port Santos, Brazil, would significantly interfere with IMC's business relationships, Dantzler callously and in bad faith refused to take any action to release the vessel from seizure.

Dantzler's actions have interfered with IMC's business relationships, including its contracts with Owners and shippers. Because Dantzler knew that its actions would and did prejudice and interfere with IMC's contractual and business relationships, Dantzler's actions are intentional.

25.     As Dantzler knew or should have known that it had no legal right, privilege, or lien that justified the continued detention of the INDUSTRIAL FIGHTER, its failure to promptly take action to release the INDUSTRIAL FIGHTER from seizure constitutes bad faith, a reckless disregard for IMC's rights, and is tortious.

26.     Dantzler's tortious interference with IMC's contractual and business relationships has caused and continues to cause IMC to sustain damages, including but not limited to the following:

    (a)     Loss of earnings and other liabilities;

    (b)     Damage to IMC's business reputation;

    (b)     Other damages to be proven at trial in this matter.

27.     The above damages sustained by IMC, which are in excess of $180,000.00, were directly and proximately caused by Dantzler's wrongful arrest of the INDUSTRIAL FIGHTER and tortious interference with IMC's contracts and/or business relationships with third-parties, and therefore Dantzler is liable to IMC for all such losses.

**WHEREFORE**, Industrial Maritime Carriers, LLC, prays that after due proceedings are had, that IMC have judgment entered in its favor for all amounts shown at trial, as well as other expenses and charges that may accrue, together with pre-judgment interest, costs, and attorneys' fees. IMC further prays for all other general and equitable relief to which it may be entitled.

Respectfully submitted,

*/s/ Phillip S. Howell*
PHILLIP S. HOWELL, Fla. Bar No.:  0377030
TODD A. JENNINGS, Fla. Bar No.: 0093910
Galloway, Johnson, Tompkins, Burr & Smith, PLC
620 East Twiggs St., Ste. 303
Tampa, Florida  33602
Tel:  813-977-120
Fax:  813-977-1288
tampaservice@gjtbs.com
phowell@gjtbs.com
tjennings@gjtbs.com
*Counsel for Industrial Maritime Carriers, LLC*

OF COUNSEL:
Jason P. Waguespack, T.A.
Nathan G. Orf
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802
Telecopier:  (504) 525-2456
ATTORNEYS FOR PLAINTIFF
INDUSTRIAL MARITIME CARRIERS, LLC