UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-22655-Civ-COOKE/TORRES

INDUSTRIAL MARITIME
CARRIERS, LLC,

      Plaintiff,

vs.

DANTZLER, INC.,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The resolution of this wrongful arrest of vessel action requires a sole determination: whether Defendant Dantzler, Inc. ("Dantzler") honestly sought and acted reasonably upon the advice of counsel in good faith when it arrested a vessel in Brazil pursuant to a court order issued by a competent Brazilian Court. If answered in the affirmative, Defendant's reliance on the advice of counsel is absolutely privileged, and bars the wrongful arrest and tortious interference with contract and/or business relationships claims brought by Plaintiff Industrial Maritime Carriers, LLC ("IMC") against it.

Having reviewed Defendant Dantzler's Motion for Summary Judgment (ECF No. 32), Plaintiff's Memorandum of Law in Opposition (ECF No. 36), Defendant Dantzler's Reply Memorandum (ECF No. 37), the record, and the relevant legal authority, Defendant carries its burden of demonstrating that there is no genuine issue of material fact disputing that it honestly sought and reasonably relied on the advice of counsel. Accordingly, Defendant is entitled to summary judgment.

### I.    BACKGROUND

The underlying material facts set forth are undisputed. On September 5, 2007, Dantzler was awarded a judgment by the Second Civil Court of the County of Itajaí, State of Santa Catarina ("Brazilian Court") against Monsted Chartering ("Monsted") in the amount of BRL $2.5 Million Reais ("Judgment"). To execute upon the Judgment against Monsted, Brazilian counsel for Dantzler petitioned the Brazilian Court for an order

authorizing the arrest of a vessel operated by Monsted's purported successor in interest, Scan-Trans Holdings A/S ("Scan-Trans"). Paulo Madeira ("Madeira"), Brazilian counsel for Dantzler, decided alone to petition the Brazilian Court to arrest a vessel of operated by Monsted's successor in interest.

Madeira submitted the Judgment against Monsted and a fleet list for Scan-Trans, along with evidence he believed showed Scan-Trans was the successor in interest to Monsted by virtue of a merger, to the Brazilian Court. Following a review of the same, the Brazilian Court issued an Order on June 7, 2013 to seize the M/V Industrial Fighter ("Industrial Fighter") in the Port of Santos in Brazil, which the Brazilian Court selected from the Scan-Trans fleet list. In accordance with Brazilian Court's Order, Tiago S. Demarque, legal counsel for Dantzler in Brazil, travelled to the Port of Santos in order to effectuate the arrest of M/V Industrial Fighter, and on Tuesday, June 18, 2013, seized Industrial Fighter as of 7:00 a.m.

The following day, on Wednesday, June 19, 2013[1], Industrial Fighter's time-charterer, Plaintiff IMC, sent a letter to Dantzler via e-mail and certified U.S. Mail informing Dantzler that "neither Monsted nor Scan-Trans, nor any of their successor in interest, have any ownership interest in" Industrial Fighter, which was supported by the enclosed reports from Lloyd's Register, Equasis Ship Folder and Thomson Reuters Accelus indicating that the registered owner of the M/V Industrial Fighter was a German entity, MS "ERIS J" Schiffahrtsgessellschaft mbH & Co. KG ("Eris"). IMC also demanded that Dantzler "immediately instruct its Brazilian attorneys to release" Industrial Fighter. The next day, on Thursday, June 20, 2013, IMC sent a second letter via facsimile and certified mail to Dantzler's registered agent, which Dantzler's President, Antonio Godinez ("Godinez") received. Godinez then consulted with legal counsel in the United States and Brazil regarding the content of IMC's correspondence. Dantzler took no action to confirm or deny IMC's claims that no alleged successor of Monsted had any ownership interest in Industrial Fighter, and took no additional action besides seeking advice of counsel to

---

[1] Dantzler disputes that it received IMC's correspondence on June 19, 2013 because the correspondence was addressed to the attention of "Dantzler, Inc., Legal Department," which Dantzler does not have.

2

procure the release Industrial Fighter.

It is clear that Godinez communicated with counsel because on the following day, Friday, June 21, 2013, IMC sent a third letter, this time to Dantzler's U.S. legal counsel confirming that they had spoken, and again explaining that because Industrial Fighter is owned by Eris, the seizure of Industrial Fighter is wrongful, and further demanding that Dantzler "immediately instruct its Brazilian attorneys to release" Industrial Fighter.

Simultaneously, on Thursday, June 20, 2013, Eris, as owner of Industrial Fighter, petitioned the Brazilian Court for release of Industrial Fighter. On the following business day, Monday, June 24, 2013, based upon Eris' motion for release, the Brazilian Court ordered the release of Industrial Fighter, which was perfected on Tuesday, June 25, 2013 at 1:00 p.m.

## II.    LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*  Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but

must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### III.   DISCUSSION

General maritime law applies to this action because "[t]his [vessel] seizure was sufficiently connected to traditional maritime activity to invoke the maritime jurisdiction of the district court." *Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*, 959 F.2d 49, 52 (5th Cir. 1992) (citing *Molett v. Penrod Drilling Co.*, 826 F.2d 1419 (5th Cir. 1987)). "Maritime law controls the substantive law of maritime seizures and requires that damages be awarded only on a showing of 'bad faith, malice, or gross negligence.' It also establishes that 'advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution.'"[2] *Marastro Compania Naviera, S.A.*, 959 F.2d at 53 (quoting *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937)); *see also Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Associates, Inc.*, 854 F.2d 410,

---

[2] Notwithstanding its holding that "Marastro acted in good faith and did not show a wanton disregard for the rights of NAFED or Canadian and that neither NAFED nor Canadian is entitled to damages for wrongful seizure," the *Marastro* court awarded storage expenses to Canadian for property under seizure pursuant to 28 U.S.C. § 1921(a)(1)(E). *Marastro Compania Naviera, S.A.*, 959 F.2d at 53-54. Plaintiff asserts that it is entitled to similar costs. *See* Pl.'s Mot. Leave File Supp. Memo, ECF No. 45.

Federal law permits the Court assess and the U.S. Marshal to collect fees for "[t]he keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving." 28 U.S.C. § 1921(a)(1)(E). Assuming, *arguendo*, that an award of such costs is recoverable by Plaintiff, such a determination would not defeat the entry of summary judgment in favor of Defendant as to both counts of Plaintiff's Original Complaint for Declaratory Judgment and Damages. Plaintiff may move for costs, which Defendant oppose, consistent with the applicable Federal and Local Rules.

411 (11th Cir. 1988) ("It is an established principle of maritime law that one who suffers a wrongful attachment may recover damages from the party who obtained the attachment, provided he prove that such party acted in bad faith."). Negligence will not suffice to maintain an action for wrongful arrest; rather, the detainee must show that the arrest arose from malice, bad faith, or reckless disregard of the other party's legal rights. *Coastal Barge Corp. v. M/V Mar. Prosperity*, 901 F. Supp. 325, 328 (M.D. Fla. 1994). This controlling legal tenet, the parties do not dispute.

      The record evidence demonstrates that Dantzler, honestly and in good faith, did nothing except rely on the advice of counsel to discharge the duty for which Dantzler hired counsel. Following six years of not collecting on the Judgment against Monsted, Brazilian counsel for Dantzler continued seeking methods for collection, which is uncontroverted that he was legally permitted to do. In doing so, based upon competent, albeit faulty evidence, Madeira petitioned the Brazilian Court to arrest a vessel he thought to be operated by Monsted's successor in interest. Upon the receipt of notice that Dantzler had arrested property not belonging to Monsted, Godinez immediately communicated with its United States and Brazilian counsel that an error may have been made, and honestly sought advice as to how to proceed. While IMC makes much of the fact that Dantzler had no input in the process of collecting on the judgment against Monsted and did not instruct counsel on next steps following the receipts of IMC's communications, it was not required to do so given that it was Dantzler who legitimately was seeking legal advice. Had Dantzler known how to proceed legally, there would be no need to seek legal advice of counsel.

      To defeat summary judgment, Plaintiff heavily relies upon *Coastal Barge Corp. v. M/V Mar. Prosperity*, which held that the ship owner was liable for wrongful arrest of the vessel where the ship owner brought a second action against the vessel without disclosing to the court a promise not to re-arrest the vessel in further pursuit of claims for relief. 901 F. Supp. 325 (M.D. Fla. 1994). However, Plaintiff's reliance is inapt in this matter where the material facts in the determination of bad faith in *Coastal Barge Corp.* are absent here. The *Coastal Barge Corp.* was influenced heavily by the fact that Coastal withheld from the warrant issuing court that it promised not to re-arrest the vessel.

> Coastal possessed knowledge which may well have precluded the arrest of the *Maritime Prosperity,* were it supplied to the Court. Coastal consciously

> withheld that information, and the Court ordered the arrest of the ship. Once the Court obtained the information, it quashed the arrest warrant. Whether or not Plaintiff followed the advice of its attorneys, its omission exhibited a reckless disregard for the truth, and that omission cannot be considered negligent. Coastal may have a good faith basis for believing that the consideration given in exchange for its promise was illusory. However, that cannot translate into a good faith basis for causing the rearrest of the *Maritime Prosperity* by the omission of a pertinent fact.

*Coastal Barge Corp.*, 901 F. Supp. at 329. Here, there is no evidence that Dantzler withheld any information from the Brazilian Court when it petitioned for the arrest of the Industrial Fighter. Importantly, Dantzler did not receive the information regarding the improper arrest until after the Brazilian Court issued the arrest order. That more and accurate information could have been provided with additional diligence of Brazilian counsel would constitute negligence, which, as enunciated in *Coastal Barge Corp*, is insufficient to maintain an action for wrongful arrest.

Plaintiff's urging of the applicability of *Sea Star Line Caribbean, LLC v. M/V SUNSHINE SPIRIT*, Case No. 09-1152 (JAF), 2009 WL 3878246 (D.P.R. Nov. 13, 2009) is similarly misplaced. In *Sea Star Line Caribbean, LLC*, the court held that a charterer acted with malice or gross negligence in wrongfully arresting a vessel owner's vessel because it had implied actual knowledge of a no liens clause in a demise charter that became a joint asset of the charterer's partnership with a sub-charterer. Here, there is no legal doctrine that would impute actual knowledge of Industrial Fighter's owner to Dantzler. The mere proposition that Dantzler is a sophisticated business entity engaged in the trade of carriage of goods by sea does not sully with the requisite bad faith or malice Dantzler's reliance on its counsel, who failed to ascertain the true owner of Industrial Fighter.

### IV.  CONCLUSION

For the aforementioned reasons, Defendant Dantzler's Motion for Summary Judgment (ECF No. 32) is **GRANTED**. Plaintiff's Original Complaint for Declaratory Judgment and Damages (ECF No. 1) is **DISMISSED** *with prejudice*. Pursuant to Federal Rule of Civil Procedure 58, a separate judgment shall issue contemporaneously.

Accordingly, it is **ORDERED and ADJUDGED** that the Defendant City of Miami Gardens' Motion for Summary Judgment (ECF No. 24) is **GRANTED**. Plaintiff's

Complaint for relation in violation of FLSA is **DISMISSED**.

**DONE and ORDERED** in Chambers at Miami, Florida, this 15th day of October 2014.

*[signature: Marcia G. Cooke]*

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*